GEORGE F. JACKSON *vs.* OLD COLONY STREET RAILWAY COMPANY.

· Plymouth.   January 10, 1910. — October 19, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Carrier*, Of passengers.   *Street Railway.   Assault and Battery.   Practice, Civil,* Verdict.   *Damages,* In tort, in mitigation.

In an action against a street railway corporation for injuries from an assault alleged to have been committed on the plaintiff by the conductor of a car of the defendant on which the plaintiff was a passenger, where it appears that during the first part of the journey in the car the plaintiff and the conductor were engaged in a quarrel of words, which resulted in ill feeling between them, but there is no evidence of any dispute during the last half of the journey, and the conductor testifies that, after the plaintiff had alighted from the car at his destination, and when the conductor was returning on the street from having set a switch, the plaintiff called the conductor an insulting name, and the conductor struck him, the jury can find that the assault occurred after the plaintiff had ceased to be a passenger, and, if they find that fact, the defendant cannot be held liable for an injury then inflicted by the conductor out of a spirit of vindictiveness for what had taken place on the car or from anger aroused by the insult of the plaintiff.

In an action against a street railway corporation for injuries from an assault alleged to have been committed on the plaintiff by the conductor of a car of the defendant on which the plaintiff was a passenger, if there is evidence that the plaintiff had reached his destination and was preparing to leave the car, and that, as he stood with one foot on the platform and the other on the step and was in the act of descending in an orderly manner, the conductor, who was standing on the ground at the foot of the steps, seized him and pulled him off the car and knocked him down, the defendant can be found to be liable for the use of unjustifiable violence by its servant.

It is the duty of a street railway corporation as a common carrier ·to protect its passengers from all unlawful violence on the part of the conductors on its cars.

Abusive and insulting language used by a partially intoxicated passenger on a street car to the conductor of the car, even if it would justify the ejection of the passenger in a proper manner, does not justify the conductor in waiting until the passenger is leaving the car and then assaulting him.

In an action against a street railway corporation for injuries from an assault alleged to have been committed on the plaintiff by the conductor of a car of the defendant on which the plaintiff was a passenger, to the question, " Did the

plaintiff provoke the assault ? " the jury answered " Yes." To the question, " Was the assault committed in an attempt to eject the plaintiff from the car ? " the jury answered " No." To the question, " Had the plaintiff ceased to be a passenger when the assault upon him was committed ? " the jury failed to agree upon an answer, and they also failed to answer the question, " What were the damages if the plaintiff should be entitled to recover ? " There was conflicting evidence as to whether the assault was committed while the plaintiff was in the act of leaving the car or after he had left it. It was conceded by the defendant that before the plaintiff left the car the only provocation for the assault was offensive language which the plaintiff addressed to the conductor in the early part of the trip. The presiding judge ordered a verdict for the defendant, and reported the case for determination by this court. *Held*, that, the question whether the plaintiff was assaulted before he ceased to be a passenger having been left undecided by the jury upon evidence which would have warranted a finding either way, the judge should not have ordered a verdict for the defendant, because, if the jury found that the conductor assaulted the plaintiff while he was in the act of leaving the car as a punishment for his offensive language in the early part of the trip, the defendant would be liable, and therefore that the verdict must be set aside and a new trial granted.

Cases establishing the duty of a common carrier of passengers to protect them from unnecessary violence on the part of its servants, collected by BRALEY, J.

Cases cited by BRALEY, J., upon the point, that, in an action against a common carrier for injuries from an assault committed by a servant of the defendant while the plaintiff was its passenger, evidence of insulting language and insolent conduct on the part of the plaintiff is admissible in mitigation of compensatory damages where such provocation was substantially coincident with the assault.

TORT against the Old Colony Street Railway Company, as a common carrier of passengers, for injuries from an assault alleged to have been committed upon the plaintiff by the conductor of a car of the defendant on which the plaintiff was a passenger. Writ dated December 30, 1904.

The pleadings are described in the opinion.

In the Superior Court the case was tried before *Bell, J.* The defendant admitted that the car belonged to the defendant and was in charge of its employees. The plaintiff testified in substance that he got on the car in Whitman; that after the car had gone about a quarter of a mile the conductor came in and said to him, " I will fix you before I get through with you. . . . Here, this is as far as you can go "; that in two lengths the car stopped on-a turnout; that the plaintiff got up and started to get out; that as he was stepping down, when he had one foot on the platform and one on the step, the conductor yanked him off and knocked him down; and that just as he was getting up the conductor hit him again and he became unconscious. He then described his injuries and the expense to which he had

been put; and he later introduced evidence that the conductor continued to strike him until he was stopped by the witness Coughlan. On cross-examination he said that he had had three drinks of whiskey, but was not under the influence of liquor; that he mistook the conductor for another conductor named Grady ; that he paid his fare ; that he went in and sat down on the long seat near the rear ; that he asked the conductor and found that he was not Grady ; that he had come to the place where he intended to get off; that the conductor was on the ground when he got up to get out. The plaintiff further testified on cross-examination as follows : " When I first got on the car I told the conductor he was a liar. The conductor said that I had not been on that car before that. I called the conductor a liar three times. I told the conductor he was drunk. He said I was drunk, and I said I was not any drunker than he. The conductor said ' You would not dare to say that to me if I was off the car.' I said, ' I would say it to you anywhere.' The conductor did not call me a liar." On redirect examination the plaintiff testified in substance : " I said first, ' Here is my fare.' The conductor said ' Go and sit down ; you are drunk.' Then I said ' You are a liar, haven't I been on the car before ? ' He said ' No.' I said again ' You are a liar.' That was all. He said he would put me off. I said he could not do it."

The conductor testified in substance as follows: " I did not know the plaintiff before. He got on near the Hobart House. He passed me a nickel. He said ' What is the matter with you ? ' I said ' Why ? ' He said, ' I came over with you at five o'clock.' I said ' No.' He then called me a liar three times. He said I was drunk. I said that if I was not on the car I would not stand for it. I stopped to throw a signal light. When I returned from throwing the light the plaintiff was standing on the ground opposite me, and called me ' a son of a bitch,' and then I struck him." On cross-examination the conductor testified in substance: " The place where I struck him was not more than three or four feet from the car. I did not motion for him to get off. I did tell the plaintiff that if he had got further to go I would put him off. He said I was a liar, and that he had got one to settle with me."

The plaintiff denied that he was on the ground when the

assault began, and denied that he used the expression " a son of a bitch."

There was evidence of other witnesses on each side tending to corroborate more or less fully the evidence of the plaintiff and of the conductor respectively. Several witnesses testified that the plaintiff talked loud and appeared to be under the influence of liquor. On the other hand one of the witnesses testified that he heard no loud, profane or indecent language, and that the plaintiff did not appear to be under the influence of liquor, although he had been drinking. There was evidence that the conductor told the plaintiff to shut up or he would put him off the car, and that the conductor beckoned to him to get off. This last the conductor denied. There was no evidence of any threats by the plaintiff or of attempts on his part to use violence, or to assault the conductor or anybody else. There was evidence, although it was contradicted by a witness for the plaintiff, that after the conductor struck him the plaintiff made a pass at the conductor and that the plaintiff got the conductor by the knees and said " You could not have done that if I had not been drunk." There also was evidence that all the conversation above related on the part of the plaintiff was during the first half of the trip, and that the last half of the time that he was on the car he made no talk whatever.

The plaintiff asked the judge for six rulings. Of these the judge gave the third, which was as follows: " If the conductor while acting as the servant of the defendant commits an assault and battery on a passenger while the passenger is in the act of riding on the car, before the passenger has let go of the handle bar which he has to use for the purpose of alighting, he is guilty of an assault."

The other rulings requested by the plaintiff were as follows:

" 1. If the conductor, while acting as a servant of the defendant, got off the car and waited intending to commit an assault and battery upon the plaintiff when the plaintiff alighted from the car, and did commit an assault and battery upon the plaintiff immediately upon his alighting to the ground and, before he started his journey across the street, then the defendant is liable.

" 2. If the conductor, while acting as a servant of the de-

fendant, acting under his authority to expel passengers from a car orders the plaintiff off the car, the conductor intending to commit an assault and battery upon him immediately upon his leaving the car and does in fact commit an assault and battery upon him immediately upon the passenger's stepping from the car and before he started his journey across the street, then the company is liable."

" 4. If the conductor, while acting as a servant of the defendant, commits an assault and battery upon a passenger who has alighted from a street car immediately upon his reaching the ground and before he has had time to start his journey across the street, the defendant is liable.

" 5. If the conductor has words with a passenger on a car while the conductor is acting as such and the conductor thereupon makes up his mind to assault the passenger as soon as the passenger alights upon the ground and does, in fact, commit an assault and battery upon the passenger immediately upon his alighting upon the ground, it is all one assault and battery having its origin upon the car.

" 6. That mere words would not constitute a provocation for an assault and battery that the conductor committed upon the passenger some minutes after the words were spoken and while the passenger was minding his business and making no show of threats."

The judge refused to make any of these rulings. He also refused to rule that the burden of proof was on the defendant to show provocation, and ruled and instructed the jury that the burden was on the plaintiff to show that the company had violated some duty which it owed to him or that by its agents it had injured him without justification; saying, " That is, if the act was done by its agents in pursuance of their duties as agents, the conductor in pursuance of his duty as conductor in ejecting a man from the car and using unreasonable violence in doing so, that has to be proven by the plaintiff by a fair preponderance of evidence. On the other hand, if the plaintiff has not been protected by the defendant as they ought to have protected him as one of its passengers, that also is for the plaintiff to prove by a fair preponderence of the evidence."

The judge added, " When I said they were obliged or bound

to protect the passengers, what I meant was, not that they are absolutely insured by them, that they are bound to use the highest degree of care of which their business is capable to protect their passengers from insult and assault which the nature of their business permits."

To these rulings and instructions on the matter of provocation and the burden of proof thereof and to the above refusals to give the instructions which he requested, the plaintiff excepted.

The judge submitted four questions to the jury, as follows:

" 1.  Had the plaintiff ceased to be a passenger when the assault upon him was committed ? "

" 2.  Did the plaintiff provoke the assault ? "

" 3.  Was the assault committed in an attempt to eject the plaintiff from the car ? "

" 4.  What were the damages if the plaintiff should be entitled to recover ? "

The jury returned the questions into court unsigned by the foreman with the word " Yes " after question 2 and the word " No " after question 3 and were unable to agree upon an answer to question 1 or question 4.  Their answers were affirmed as usual.  No objection was taken or suggested to the form in which the answers were made.

The judge " thereupon, in order that the questions in the case might so far as possible be determined, ordered the jury to return a verdict for the defendant " and reported the case for determination by the full court, judgment to be entered upon the verdict or a new trial to be granted or such other order to be made as law and justice might require.

*C. B. Snow*, for the plaintiff.

*Asa P. French*, for the defendant.

BRALEY, J.  The plaintiff, having entered the car and paid his fare, became a passenger, and when the evidence closed it was uncontroverted that he had been assaulted by the conductor, although the place of the assault was for the jury to decide, upon conflicting evidence.

During the first part of the journey, they engaged in a verbal quarrel, which resulted in ill feeling between them ; but there was no testimony that during the last half of the journey the dispute was renewed, or that the plaintiff was told that if upon

request he did not depart he would be put off when the car stopped at the turnout, where the conductor was to set a switch and display a signal light.

If, as the defendant contended and its witnesses testified, the jury were satisfied that the encounter took place after the conductor returned from the switch, they could find that the plaintiff, having passed from the car, had become a traveller, and the defendant would not be responsible for an injury then inflicted out of a spirit of vindictiveness for what had taken place on the car, or by anger aroused by the insult with which as the conductor testified the plaintiff then greeted him.   *Creamer* v. *West End Street Railway,* 156 Mass. 320.   *McGilvray* v. *West End Street Railway,* 164 Mass. 122.   *Conroy* v. *Boston Elevated Railway,* 188 Mass. 411.

The plaintiff however contended that upon arrival at the turnout he had reached the end of his journey and prepared to leave, and the jury would have been warranted in finding upon his evidence that as he stood with one foot on the platform and the other on the step, and while he was in the act of descending, the conductor, who was standing on the ground at the foot of the steps, seized, pulled him off and knocked him down.   If the turnout was his destination, or if, in response to the conductor's order, which the plaintiff said was given, he was leaving the car, as the evidence shows, without making any resistance and in an orderly manner, the use of violence upon his person was unjustifiable. *St. John* v. *Eastern Railroad,* 1 Allen, 544.

It is only where a passenger refuses to comply with a lawful order, that, if he resists, reasonable force may be used to eject him.   *Coleman* v. *New York & New Haven Railroad,* 106 Mass. 160.   *Conklin* v. *Consolidated Railway,* 196 Mass. 302.   And, if he uses violence on his part beyond what is necessary to prevent blows or to protect himself from excessive force, the burden is on him to prove that his illegal acts did not contribute to the injury. *Coleman* v. *New York & New Haven Railroad,* 106 Mass. 160.

The declaration, which is for an assault and battery upon the plaintiff, alleges that the assault was committed by the defendant's conductor while the plaintiff was a passenger, and the answer, after a denial of these allegations, raised by further averments the issues that, if an assault was committed, the con-

ductor at the time was not acting within the scope of his employment, or, if he was so acting, that the force used was not excessive but was justifiable in self-defense, to repel an attack by the plaintiff. But there is no evidence to which this last averment is applicable. It appears that neither in the car nor while passing from the car to the ground did the plaintiff threaten him with bodily harm or lay hands upon the person of the conductor.

If the defendant intended to rely upon the defense that the plaintiff was rightly ejected with the use of no more force than was necessary, it should have pleaded the avoidance. It was not available under the present answer. *Hathaway* v. *Hatchard*, 160 Mass. 296. *Dixon* v. *New England Railroad*, 179 Mass. 242, 249. The conductor, if attacked during transportation, undoubtedly would have been justified in using sufficient force to repel the assault and protect himself, and this defense would be available in the defendant's behalf when sued for his acts. *New Orleans & Northeastern Railroad* v. *Jopes*, 142 U. S. 18. It is plain upon the evidence, as it stood at the close of the trial, that a verdict for the defendant could not have been ordered, and, apparently with the consent of the parties, the judge submitted to the jury three questions, the answers to which it was assumed would be decisive of the defendant's liability. The first question, however, was not answered; and, the answer to the third question simply having negatived any contention of the plaintiff that an attempt was made to eject him as he was leaving the car, the further issue, covered by the first question, whether he was assaulted before he ceased to be a passenger, was left undecided.

But, if there was evidence that the assault took place on the car, the defendant, without any objection by the plaintiff that the defense was not open under the pleadings, took the position that a failure to answer the first question became immaterial, since, the jury having found in answer to the second question that the assault was provoked by the plaintiff, it was not liable even if the contract of carriage had not been terminated.

The evidence leaves no doubt, and the defendant concedes, that the only provocation during transportation was the offensive language which the plaintiff addressed to the conductor, and it

also should be borne in mind that the jury could find that, not only was the battery disproportionate to the insult given, but the assault was not delivered at the time of the alleged provocation, if the assailant waited until the plaintiff was leaving the car. In other words, the defense is, that because the plaintiff, while a passenger, insulted the conductor by the use of abusive language, he contributed to his own harm, or invited the punishment inflicted upon him, and thereafter during transportation the defendant was discharged from any further duty to protect him from an assault by its servant. If the plaintiff's words absolved the defendant, then where a passenger purposely behaves in an insulting manner toward a servant, the passenger no longer can claim the protection of the carrier, but is put in jeopardy of a retaliatory assault at any time before transportation has ended, if such be the pleasure of the servant. He may be seriously injured or crippled for life, but has no remedy except to sue the servant, while, in the meantime, all other duties arising out of the contract must be reasonably performed by the carrier. By the plaintiff's contract, the duty rested upon the defendant of affording him full protection from unlawful violence at the hands of the conductor, to whom, as its representative, the management of the car had been entrusted. *Ramsden* v. *Boston & Albany Railroad*, 104 Mass. 117, 121. In *Bryant* v. *Rich*, 106 Mass. 180, 190, Chief Justice Chapman, in speaking of this duty, said, " for a violation of such a contract either by force or negligence, the plaintiff may bring an action of tort, or an action of contract," and in the case of *Goddard* v. *Grand Trunk Railway*, 57 Maine, 202, 213, which was referred to in the opinion with approval, it was said, " the carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully, and if he entrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust. The law seems to be now well settled that the carrier is obliged to protect his passengers from violence and insult, from whatever source arising. . . . He must not only protect his passenger against the violence and insults of strangers and co-passengers, but *a fortiori* against the violence and insults of his own servants. If this duty to the passenger is not performed, if this protection is not furnished, but on the contrary the passenger

is assaulted and insulted, through the negligence or the wilful misconduct of the carrier's servant, the carrier is necessarily responsible."

It is to be presumed that the defendant did not authorize the acts complained of, and no question of the conductor's authority is involved. The plaintiff's contract was with the defendant, whose liability for the consequences which could have been found to have followed from neglect of its duty to protect the plaintiff while he remained a passenger from the conductor's violence is established not only by our own decisions but by the great weight of authority. *Moore* v. *Fitchburg Railroad,* 4 Gray, 465. *St. John* v. *Eastern Railroad,* 1 Allen, 544. *Ramsden* v. *Boston & Albany Railroad,* 104 Mass. 117, 121. *Bryant* v. *Rich,* 106 Mass. 180. *Brooks* v. *Old Colony Railroad,* 168 Mass. 164, 165. *Levins* v. *New York, New Haven, & Hartford Railroad,* 183 Mass. 175, 177. *Hayne* v. *Union Street Railway,* 189 Mass. 551. *Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass. 341, 346. *Busch* v. *Interborough Rapid Transit Co.* 187 N. Y. 388, 392. *Hanson* v. *European & North American Railway,* 62 Maine, 84, 88. *Pittsburg & Connellsville Railroad* v. *Pillow,* 76 Penn. St. 510. *Craker* v. *Chicago & Northwestern Railway,* 36 Wis. 657. *Chicago & Eastern Railroad* v. *Flexman,* 103 Ill. 546. *Williams* v. *Gill,* 122 N. C. 967. *Birmingham Railway, Light & Power Co.* v. *Mullen,* 138 Ala. 614. *Spohn* v. *Missouri Pacific Railway,* 101 Mo. 417. *New Orleans, St. Louis & Chicago Railroad* v. *Burke,* 53 Miss. 200. *McKinley* v. *Chicago & Northwestern Railroad,* 44 Iowa, 314, 318. *Louisville & Nashville Railroad* v. *Kelly,* 92 Ind. 371. *Sherley* v. *Billings,* 8 Bush, 147. *Baltimore & Ohio Railroad* v. *Barger,* 80 Md. 23. *Haver* v. *Central Railroad,* 33 Vroom, 282, 285. *Knoxville Traction Co.* v. *Lane,* 103 Tenn. 376. *Mahoning Valley Railway* v. *DePascale,* 70 Ohio St. 179. *Lafitte* v. *New Orleans, City & Lake Railroad,* 43 La. Ann. 34. *Houston & Texas Central Railway* v. *Batchler,* 32 Tex. Civ. App. 14, 17. *Haman* v. *Omaha Horse Railway,* 35 Neb. 74. *Smith* v. *Norfolk & Western Railway,* 48 W. Va. 69, 70. *Texas & Pacific Railway* v. *Williams,* 62 Fed. Rep. 440. *Harrison* v. *Fink,* 42 Fed. Rep. 787. *New Jersey Steamboat Co.* v. *Brockett,* 121 U. S. 637. *New Orleans & Northeastern Railroad* v. *Jopes,* 142 U. S. 18. It

results from the application of this rule that the servant is justified in using force upon a passenger only to protect himself from bodily harm, but even then he cannot lawfully go further than is reasonably necessary for his defense, and the proper management of the carrier's business.

If provocation by mere words therefore does not exonerate the carrier, yet when sued for the assault, evidence of insulting language and insolent conduct of the passenger which induced the attack is admissible in mitigation of compensatory damages, where it appears that the provocation and the blow were substantially coincident. *Child* v. *Homer*, 13 Pick. 503, 507. *Brown* v. *Gordon*, 1 Gray, 102. *St. John* v. *Eastern Railroad*, 1 Allen, 544. *Tyson* v. *Booth*, 100 Mass. 258. *Bonino* v. *Caledonio*, 144 Mass. 299. *Kiff* v. *Youmans*, 86 N. Y. 324, 330. *Robison* v. *Rupert*, 23 Penn. St. 523. *Baltimore & Ohio Railroad* v. *Barger*, 80 Md. 23, 24.

We find nothing in the cases cited by the learned counsel for the defendant which materially modifies or affects the conclusion to which we have come, except the case of *Scott* v. *Central Park, North & East River Railroad*, 53 Hun, 414, where a contrary decision was made by a divided court. But that case was doubted, criticised and not followed in *Weber* v. *Brooklyn, Queens County & Suburban Railroad*, 47 App. Div. (N. Y.) 306; *S. C.* 62 N. Y. Supp. 1. The use of opprobrious and hot tempered language by the plaintiff, even though it was justly provocative of anger and, with his partial intoxication, might have warranted his ejection as a passenger, did not justify the use of physical force upon his person by the conductor, whatever may have been the motive by which he was prompted, and the defendant's duty had not been discharged until the plaintiff had a reasonable opportunity to pass unmolested from the car and to depart. The substantial error of the trial arose from the assumption that under the circumstances verbal provocation was the legal equivalent of justification, and, the special findings of the jury not having determined the rights of the parties if the assault was committed as described by the plaintiff, the judge could not properly order a verdict for the defendant. *Hurley* v. *Boston*, 202 Mass. 68.

We do not find it necessary to consider more specifically the

rulings given and refused. In accordance with the terms of the report a majority of the court are of opinion that the verdict must be set aside and a new trial granted.

*So ordered.*